UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

RelAxe FLSE LLC

    v.                                                Civil No. 22-cv-327-LM
                                                         Opinion No. 2023 DNH 094 P

JBL Village Shoppes LLC

**O R D E R**

In this diversity action, plaintiff RelAxe FLSE LLC ("RelAxe") sues defendant JBL Village Shoppes LLC ("JBL") for failing to return a security deposit after a dispute arose concerning a lease for a commercial property in Florida. JBL moves to dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), claiming this court lacks personal jurisdiction and that venue is improper. In the alternative, JBL seeks a transfer to the U.S. District Court for the Southern District of Florida. For the following reasons, the court grants defendant's motion to dismiss for lack of personal jurisdiction (doc. no. 11) and transfers the case to the U.S. District Court for the Southern District of Florida.

**STANDARD OF REVIEW**

When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating personal jurisdiction. Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). As the court is relying on submissions and not conducting an evidentiary hearing to determine whether the court has personal jurisdiction, the court uses the prima facie standard. Rodriguez-

Rivera v. Allscripts Healthcare Solutions, Inc., 43 F.4th 150, 160 (1st Cir. 2022). Under the prima facie standard, the court takes the plaintiff's properly supported proffers of evidence as true and construes those proffers in the light most favorable to the plaintiff. Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 147 (1st Cir. 2021); see Lin v. TipRanks, Ltd., 19 F.4th 28, 33 (1st Cir. 2021) (explaining that the court takes the "specific facts affirmatively alleged by the plaintiff as true" regardless of whether they are disputed but, at the same time, does not credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts"). The court also considers any undisputed facts offered by the defendant. Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).

## BACKGROUND

The facts relevant to personal jurisdiction are not in dispute. RelAxe is an axe-throwing establishment located in Manchester. Tracey McCormick is the owner of RelAxe and a New Hampshire resident. JBL is a Florida company that owns the Village Shoppes, a retail mall in the Village of Royal Palm Beach, Florida.

In the summer of 2021, McCormick saw the site plan and a flyer for the Village Shoppes. Wanting to expand the business outside of New Hampshire, McCormick contacted JBL about the property and began communicating with representatives of JBL about it.[1] Early on in their communications, employees at JBL directed McCormick's attention to an alternative unit within the same mall.

---

[1] The record does not contain any of the emails or other records from the pre-lease communications.

This new unit became the subject property for the lease agreement at the center of this dispute. On November 6, 2021, the parties agreed to a Letter of Intent. The Letter of Intent indicated that the forthcoming lease agreement would be contingent on RelAxe obtaining the necessary permits for construction.

Following the Letter of Intent, the parties began negotiating a lease agreement. JBL sent a first draft of a lease agreement to RelAxe on November 15, 2021, but RelAxe was not satisfied with the terms. After five subsequent drafts, the parties reached agreement on the terms of a lease and executed it on January 24, 2022 ("the Lease"). RelAxe signed the Lease via email in New Hampshire on January 20, 2022, and JBL signed it via email in Florida four days later. The Lease contains a clause rendering it "null and void" and requiring JBL to return RelAxe's deposit if RelAxe could not obtain the "required and necessary approvals to conduct [its] business" by August 22, 2022 ("Null and Void Clause"). The Lease has a Florida choice of law provision and a provision granting JBL a contingent lien on RelAxe's property in New Hampshire.[2]

Following execution of the Lease, RelAxe began the process of seeking permits from the Village for the necessary approvals. Between February and July 2022, RelAxe and JBL communicated regularly via email and phone about the survey, site plans, and other paperwork required to secure the building permits.

As the Null and Void Clause's August 22 deadline approached, RelAxe ran into delays getting the necessary approvals. RelAxe alleges that JBL's untimely

---

[2] The Lease states that JBL's lien on RelAxe's property is to "secure the payment of all rent . . . and the faithful performance of the lease by [RelAxe]."

3

delivery of the necessary documentation caused these delays. As of July 20, 2022, the Village had not issued a permit for construction, and RelAxe concluded that it could not obtain approvals in time to conduct its business by August 22. As a result, RelAxe invoked the Null and Void Clause and requested prompt return of the deposit. JBL responded that the Lease was still in effect and that RelAxe was required to make rent payments pursuant to the Lease.

All the communications related to the Lease took place either over the phone or by email between McCormick (for RelAxe in New Hampshire) and certain JBL employees in Florida.[3] JBL's only contacts with New Hampshire were the phone calls and emails made in Florida to and with McCormick in New Hampshire.[4] JBL owns no property in New Hampshire, maintains no mailing address, telephone numbers, or bank accounts in New Hampshire, and no JBL employees traveled to New Hampshire for business.

On August 24, 2022, RelAxe filed this action seeking a declaratory judgment that the Lease is null and void, thereby requiring JBL to return to RelAxe the previously paid deposit ($35,034.20).[5] JBL then filed this motion to dismiss for lack

---

[3] Mike Yankov (JBL's Property Manager) and Juan Restrepo (JBL's Director of Leasing) were the primary points of contact for McCormick.

[4] RelAxe does not specifically state that it was physically present in New Hampshire while communicating via email and telephone with JBL. For the purposes of this motion, however, the court construes this fact in RelAxe's favor and assumes that RelAxe was physically present in New Hampshire throughout this time.

[5] The deposit does not exceed the amount in controversy ($75,000) required for diversity. However, this dispute is a declaratory judgment action concerning the Lease and the liability plaintiff faces under that Lease exceeds the jurisdictional

4

of personal jurisdiction. In the alternative, JBL requests a transfer to the U.S. District Court for the Southern District of Florida.

## DISCUSSION

To establish personal jurisdiction over a defendant in a case where subject matter jurisdiction is based on diversity, as it is here, the court, "must determine whether the defendant's contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 258 (1st Cir. 2022). New Hampshire's long-arm statute reaches to the full extent the Constitution allows. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999). Thus, the "court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards." Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995).

The Fourteenth Amendment's Due Process Clause prohibits a court from asserting personal jurisdiction over a defendant unless the defendant has sufficient minimum contacts with the forum state to allow the defendant to reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297

---

requirement. See Kurra v. Synergy Computer Solutions, Inc., No. 15-cv-13952-ADB, 2016 WL 5109132, at *4 (D. Mass. Sept. 19, 2016) (finding that amount in controversy in declaratory judgment action claiming contract unenforceable is amount plaintiff stood to lose if contract were enforced); General Motors, LLC v. Royal Motors Corp., 769 F. Supp. 2d 73, 7 (D.P.R. 2011) ("In an action for declaratory judgment, the amount in controversy is measured by the value of the object of the litigation.") (internal quotation marks removed).

5

(1980). The court may have personal jurisdiction over a defendant through either "general" or "specific" jurisdiction. See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019).

In this case, RelAxe seeks to establish only specific jurisdiction. The test for establishing specific jurisdiction has three prongs, all of which must be met for the court to exercise personal jurisdiction over a defendant:

> **First**, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. **Second**, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, there by invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. **Third**, the exercise of jurisdiction must be reasonable.

Id. (emphases added) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

The court addresses only the second prong, purposeful availment, because RelAxe has failed to show it here. Purposeful availment exists "when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." LP Solutions, LLC v. Duchossois, 907 F.3d 95, 103 (1st Cir. 2018) (quoting United States v. Swiss Am. Bank, 274 F.3d 610, 624 (1st Cir. 2001)). The purposeful availment requirement "ensures that the exercise of jurisdiction is essentially voluntary and foreseeable . . . and is not premised on a defendant's random, fortuitous, or attenuated contacts." Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019) (citation and internal quotation marks omitted). As such, the "cornerstones" of this analysis are voluntariness and

6

foreseeability. CW Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 49, 66 (1st Cir. 2014).

"Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant . . . .'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Burger King, 471 U.S. at 475). The voluntariness of JBL's contacts with RelAxe in New Hampshire is not disputed. Foreseeability, on the other hand, "means that 'the defendant's conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there.'" PREP Tours, 913 F.3d at 32 (quoting World-Wide Volkswagen, 444 U.S. at 297).

A contract between an out-of-state defendant and an in-state plaintiff does not, by itself, create personal jurisdiction. Phillips Exeter Acad., 196 F.3d at 290 (citing Burger King, 471 U.S. at 478-79). The court instead looks to other factors that would create a substantial connection between the defendant and the forum, which "vary with the quality and nature of the defendant's activity." PREP Tours, 913 F.3d at 20 (quoting Burger King, 471 U.S. at 474-75). In cases like this one, where the operative contacts were done through remote communications like email and phone calls, the First Circuit has found purposeful availment based on three factors: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." Id. (quoting Copia Communications, LLC v. AMResorts, L.P., 812 F.3d 1, 6 (1st Cir. 2016), which applies the factors

7

established in CW Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59 (1st Cir. 2014) and Cossart v. United Excel Corp., 804 F.3d 13 (1st Cir. 2015)).

In this case, none of these factors is present. First, JBL engaged in no in-forum solicitation of RelAxe's services. On the contrary, RelAxe approached JBL about the property after seeing a cite plan on JBL's website. JBL did not seek out RelAxe's business and did not target advertisements at New Hampshire. Second, JBL did not anticipate any in-forum services would be provided by RelAxe. The Lease was for property in Florida. And, finally, RelAxe did not perform any in-forum services for JBL.

JBL is a Florida company with no property or other business in New Hampshire. All relevant contacts with New Hampshire were done over the phone and via email with RelAxe, and no JBL employee ever traveled to New Hampshire during these negotiations. And the Lease itself is governed by Florida law. Cf. Burger King, 471 U.S. at 481-82 (emphasizing the existence of a choice of law provision as a purposeful connection to that state).

Other districts have similarly found no personal jurisdiction under almost identical facts as the court is presented with in this case. See Payless Shoesource, Inc. v. Joye, No. 11-CV-4145-CM, 2012 WL 646024 (D. Kan. Feb. 27, 2012); see also My Favorite Year, Inc. v. Kiosk Building Assocs., L.P., CIV. A. 90-2155, 1991 WL 33583 (E.D. La. March 4, 1991); Daily Access Corp. v. Gaedeke Holdings, Ltd., No. 12-00217-KD-B, 2012 WL 6728051 (S.D. Ala. Dec. 7, 2012). Payless, for example, involved a dispute over a lease between an in-forum lessee, Payless (Kansas), and

8

an out-of-forum lessor, Dena Trust (California), for an out-of-forum property (California). The court found that defendant's contacts with Kansas were insufficient to establish purposeful availment despite over 200 payments sent by Payless from Kansas, regular communication between the lessee in Kansas and the lessor in California about the lease, and the fact that Payless signed the lease in Kansas. Payless, 2012 WL 6728051, at *2. The court highlighted the lack of defendant's solicitation of business in Kansas, the lack of any physical presence by defendant in Kansas, and the existence of a California choice of law provision as significant factors that defeat purposeful availment. Id. at *2-*3.[6]

For these reasons, the court does not find that JBL purposefully availed itself of "the privilege of conducting activities" in New Hampshire, or in any way invoked the "benefits and protections" of New Hampshire's laws. PREP Tours, 913 F.3d at 17. Nothing in JBL's conduct would render its "involuntary presence" in a New Hampshire court foreseeable. Id. Without a finding of purposeful availment, RelAxe's invocation of specific jurisdiction fails. Accordingly, plaintiff has failed to meet its burden of demonstrating this court has jurisdiction over JBL.[7]

---

[6] RelAxe relies on The Lyme Timber Co. v. DSF Investors, 150 N.H. 557 (2004), to argue that purposeful availment has been met. However, Lyme Timber is wholly distinguishable from the present case. The claim in that case was tortious misrepresentation, which calls for consideration of different personal jurisdiction factors. 150 N.H. at 558-59.

[7] As this court finds no personal jurisdiction over JBL, the court need not address venue.

## CONCLUSION

Although this court lacks personal jurisdiction over JBL, outright dismissal of the case is not required. Here, JBL seeks transfer as an alternative remedy. Since JBL is located in Florida, Florida has the necessary ties to this case. Under 28 U.S.C. § 1631, the court "shall, if it is in the interest of justice, transfer" the case to any other court where the suit could have been brought originally. Section 1631 establishes a "rebuttable presumption in favor of transfer" that is overcome only if the "inquiring court determines that transfer is not in the interest of justice." Belmont v. Bower, No. 19-cv-1155-LM, 2020 WL 1290356, at *3-*5 (D.N.H. Mar. 18, 2020) (quoting Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 114-19 (1st Cir. 2016), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017)). The court finds that the interest of justice is served by transferring this case to the U.S. District Court for the Southern District of Florida. See § 1631; Cimon v. Gaffney, 405 F.3d 1, 7 & n.21 (1st Cir. 2005) (indicating that § 1631 allows transfer when the court lacks personal jurisdiction).

Accordingly, the court directs the clerk of court to transfer this case to the U.S. District Court for the Southern District of Florida.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 8, 2023

cc: Counsel of Record.